RAMON NUNEZ v. THE STATE.

No. 2344.   Decided March 12, 1913.

Rehearing denied May 14, 1913.

**1.—Kidnapping—Bills of Exception.**

Where the bills of exception are not approved by the trial judge, they can not be considered on appeal; however, where it was shown, upon motion for

rehearing, that the bills were approved by the judge and that the clerk inadvertently omitted to so certify in the transcript, they will be considered.

**2.—Same—Continuance—Want of Diligence.**

Where the application for continuance showed a want of diligence in applying for process of the absent witness, there was no error in overruling same.

**3.—Same—Evidence—Conspiracy—Defendant's Absence.**

Where, upon trial of kidnapping, the evidence showed a well developed conspiracy between the defendant and others, there was no error to admit in evidence the acts, words, and conduct of each and all the conspirators in furtherance of the common design, and this whether the person on trial was actually present at all times or not.

**4.—Same—Evidence—Circumstances.**

Upon trial of kidnapping, there was no error in admitting testimony that the witness saw defendant and others have the party injured in charge taking him across the Rio Grande river, although the witness may not have seen them take bodily charge of said party.

**5.—Same—Boundary Line—Evidence.**

Where, upon trial of kidnapping, the evidence showed that the party alleged to have been kidnapped was taken across the Rio Grande river from the United States of America to the Republic of Mexico without his consent, there was no error in admitting evidence which tended to show that the point where the alleged kidnapping took place was in El Paso County, Texas.

**6.—Same—Boundary Line—Erosion—Sudden Change—Charge of Court—Treaty.**

Where, upon trial of kidnapping, the court properly submitted the Treaty of Guadalupe Hidalgo with reference to the boundary line between the Republics of Mexico and the United States, there was no error in refusing a special charge with reference to a sudden change of the Rio Grande river bed, there being no evidence on this matter.

**7.—Same—Sufficiency of the Evidence.**

Where, upon trial of kidnapping, the evidence sustained the conviction, there was no error.

Appeal from the District Court of El Paso. Tried below before the Hon. Dan M. Jackson.

Appeal from a conviction of kidnapping; penalty, four years imprisonment in the penitentiary.

The opinion states the case.

*Chas. Owen* and *Paul Boykin,* for appellant.—On question of admitting testimony of the acts and conduct of co-conspirator: Fore v. State, 5 Texas Crim. App., 251; Cooper v. State, 7 id., 194; Francis v. State, 7 id., 501; Davis v. State, 9 id., 363; Marwilsky v. State, 9 id., 377; Logan v. U. S., 144 U. S., 263; Brown v. U. S., 150 U. S., 93.

On question of charge of court on treaty: Federal Statutes, vol. 7, pp. 694, 710.

*C. E. Lane,* Assistant Attorney-General, for the State.

HARPER, JUDGE.—Appellant was prosecuted and convicted of the

offense of kidnapping, and his punishment assessed at four years confinement in the penitentiary.

There are six bills of exception in the record, but none of them show that they were ever presented to or approved by the judge trying the case. A bill of exceptions prepared and filed by appellant's counsel without the knowledge, consent or approval of the trial judge can not be considered by this court. A bill must be approved by the judge, and his approval verified by his signature. Consequently, the questions sought to be raised by these bills can not be considered, and we will not discuss them.

The fact that defendant was arrested on a capias in another case pending against him during the time he was on trial in this case would present no error.

The court instructed the jury as to the boundary line between Mexico and the United States in the following language:

"You are instructed that under the Treaty of Guadalupe Hidalgo, proclaimed July 4, 1848, between the United States of America and the Republic of Mexico, a portion of article 5 provides as follows:

" 'The boundary line between the two Republics shall commence in the Gulf of Mexico three leagues from land opposite the mouth of the Rio Grande, otherwise called Rio Bravo Del Norte, or opposite the mouth of its deepest branch, if it should have more than one branch emptying directly into the sea; from thence up the middle of the river, following the deepest channel where it has more than one, to the point where it strikes the southern boundary of New Mexico.'

"You are further instructed that under the Gadsden Treaty, proclaimed June 30, 1854, the boundary between the United States and Mexico was not changed in so far as the boundary between Mexico and that part of the United States, embraced in Texas, is concerned."

Appellant claims that these treaties have been amended by the treaty of 1884, and requested the court to charge the jury as follows:

"You are hereby instructed that the treaty between the United States of America and the Republic of Mexico makes the boundary line between the two countries the normal channel of the Rio Grande river, notwithstanding any alteration between the banks or in the course of the river, provided that such alteration be effected by natural causes, through the slow and gradual erosion and deposit of alluvium and not by the abandonment of an existing river bed and the opening of a new one.

"If, therefore, you believe from the evidence that the Rio Grande river ran in a channel between Tornill · and the present channel of the river and northerly of the place where Lawrence F. Converse was arrested, should you find that he was arrested, and that said river changed its course suddenly into a new channel, or the present channel, and did not change by gradual erosion and deposit of alluvium, then you will find that said Lawrence F. Converse was not arrested or restrained

of his liberty within the County of El Paso and State of Texas, and you will, therefore, acquit the defendant."

As there is no proof in the record that the bed of the river was suddenly changed, there was no error in refusing the special charge, nor in the court giving the charge complained of in the motion for new trial and herein copied.

The other matters complained of relate to the admissibility and rejection of testimony, and as the bills of exception are not verified by the trial judge's signature, we can not consider them. But if we should consider them, we think the evidence would raise the issue of a conspiracy, and under such circumstances the statements of all parties connected with and during the continuance of the conspiracy would be admissible in evidence.

The judgment is affirmed.

*Affirmed.*

### ON REHEARING.

#### May 14, 1913.

At a former day of this term this case was affirmed,—the bills of exception not bearing the signature of the trial judge were not considered. Since that time the clerk certifies that the bills on file were in fact approved by the judge, and it was an error on his part in copying them in the transcript.

The first bill complains of the action of the court in overruling his application for a continuance. The record discloses that appellant was arrested on May 19th, and no process was issued for any witness until October 26th, the case being set for trial October 31st. Such lack of diligence is inexcusable, and the court did not err in overruling the application.

According to the State's evidence, Lawrence Converse and another were in El Paso County about four or five miles southeast of Tornillo, and in about 640 feet of the Rio Grande river, when appellant and three other men arrested them and carried them across the river and delivered them to a company of Mexican soldiers. Mr. Converse testified: "They took us to the bank of the river on the Mexican side where there were some Mexican soldiers and delivered us to the soldiers, who tied our hands behind our backs and placed a rope around our necks. The defendant was present at the time. The rope was then tied to the pommel of a saddle, which was on a horse ridden by a Mexican Federal soldier in uniform." Appellant being the person who arrested Mr. Converse and carried him across the river, the fact that he delivered him to soldiers who placed him in jail became admissible, and the court did not err in so holding. The facts in this case show a well developed conspiracy to kidnap these two men. The soldiers came to the river bank, and appellant and two or three others in citizens clothes approached Converse and his friend, forcibly took charge of them, and carried them to the soldiers, and under such circumstances the acts,

words and conduct of each and all the conspirators in furtherance of the common design become admissible until the termination of the conspiracy, whether the person on trial was actually present at all times or not. Baker v. State, 7 Texas Crim. App., 612; Avery v. State, 10 Texas Crim. App., 199; Hatcher v. State, 43 Texas Crim. Rep., 237. And it does not alter the rule that a portion of the acts, such as placing Converse in jail, was done in Mexico.

While the witness Santiago Perea may not have seen appellant and the others in fact take bodily charge of Converse, yet he saw them when they had him in charge taking him across the river, and the court did not err in permitting him to so state.

Converse was kidnapped on February 20th. Appellant sought to raise the issue that the place where they took charge of Converse was in fact in Mexico and not in the United States, and under such circumstances there was no error in permitting Mr. Howell to testify that he was at this place just eight days thereafter, and detail facts which tended to show that the point of arrest was in fact in El Paso County. Eight days would not be so remote as to render the testimony inadmissible, and it is not suggested even by the testimony that conditions had been altered the least during those few days.

After again thoroughly reviewing this record, we are of the opinion that the testimony shows beyond question that the place where appellant took charge of Converse is in El Paso County, and he was carried by appellant across the border, and delivered to the Mexican soldiers, and the motion for rehearing should be overruled.

*Overruled.*